47 CCPA
**Application of Ferdinand LANGE.**
**Patent Appeal No. 6520.**

United States Court of Customs
and Patent Appeals.
June 29, 1960.

Michael S. Striker, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This is an appeal from a decision of the Patent Office Board of Appeals affirming the rejection of claims 22, 24, 26 and 27, being all the remaining claims of the appellant's application, serial No. 289,122 filed May 21, 1952, for "Collapsible Wrapped Folding Box Structure." Claims 22 and 24 are directed to a composite blank, and claims 26 and 27 to an erected wrapped box structure which can be, but does not have to be, constructed from the composite blank of claims 22 and 24. Although the board chose one of the claims for the blank as illustrative, we think that the invention can be more readily understood if consideration be directed to the box claims. Claim 27 is as follows:

"A wrapped box structure comprising, in combination, a former box constituted by a single elongated substantially rectangular former sheet of relative stiff foldable sheet material having two elongated end portions, two elongated side portions on both sides of one of said end portions, respectively, and an intermediate portion between said end portions, said intermediate portion having a plurality of parallel transverse creases normal to the length of said former sheet and being spaced from each other a distance substantially equal to the width of said side portions, said end portions being arranged in such overlapping relationship with each other that the same are substantially parallel to and face each other and are spaced from each other a distance substantially equal to said width of said side portions and said side portions being arranged in such overlapping relationship with each other that the same are opposite and face each other so that said former sheet forms a box at least a portion of one end wall of which box is constituted by one of said end portions, at least a portion of the opposite end wall of which box is constituted by the other of said end portions, two opposite side walls of which box are constituted by said side walls, respectively, and a base wall of which box which joins said end walls is constituted by a part of said intermediate portion which lies between two adjacent creases, said former box thus having a shape corresponding susbtantially to that of a rectángular prism the thickness of which is equal to the width of said side portions and consequently to the distance which adjacent creases of said intermediate portion are spaced from each other; and a wrapping sheet of pliable material firmly secured to the outer face of one of said end portions of said former sheet and wrapped about said former box."

In a general way, one embodiment of the structure claimed consists of an oblong, rectangular, flat box of cardboard enclosed in a cellophane wrapper.

The inner box is made from a single piece of cardboard from which are formed two broad panels, which may be taken as the top and bottom of the box, two end walls with a flap on the end at which the box is opened and, in claim 27, two side walls. Thus in the structure of claim 27, the cardboard encloses the contents on all sides. Claim 26 omits the side walls, a feature which we do not regard as affecting patentability. The outside wrapper is attached to one of the broad panels (it would be the top panel as the box is ordinarily held when opened) near the end where the box opens. Beginning at a point about halfway from the end, the top panel is scored across at intervals equal to the height of the side

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge* *O'Connell,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

walls. The same piece of cardboard is then bent over to form the end of the box and then continues around, forming another (the bottom) panel, to the farther end where it is again bent to form the end flap. Attached to this second or bottom panel, in fact simply bent up from its edges, are the side walls.

To open the box, the end flap is opened and it, with the bottom panel, is pulled out of the wrapper. As the bottom panel comes out of the wrapper, it forms a sort of tray which will support the contents of the package. At the same time, the scored sections of the top panel (to which the wrapper is attached) move successively stepwise around the contents, each one in turn forming first the end of the box and then a section of the bottom, at the same time moving the contents toward the open end of the box. When the box is being closed, this action is reversed simply by pushing the tray back into the wrapper, the scored sections moving up around the end, again stepwise, and, when the tray is all the way in, the end flap can be folded up and thus the box restored to its original condition.

The references relied on are:

| Jezalik | 370,481 | Sept. 27, 1887 |
| Ward | 870,398 | Nov. 5, 1907 |
| Rosen | 1,933,516 | Oct. 31, 1933 |
| Glover | 2,358,802 | Sept. 26, 1944 |

The only one of these which needs any extended discussion is the patent to Jezalik. It discloses an outside rectangular, open ended, oblong structure, described as a "guide box or casing" of more or less rigid material. Inside and attached to the top of the box near the end to be opened is a strip or ribbon of paper approximately as wide as the box, long enough to run to the other end of the box, curve around the contents and run back to the end which opens, where it is folded up and back to form the flap. The paper strip has no side walls and the exterior box has no end piece, the contents being held in at the end opposite

the flap by the strip, which at that point forms a curved end for the guide box. To remove the contents of the box, the flap is opened and the flexible inner member is pulled out by its lower portion and, as it moves, it slides around the end of the contents pulling the contents with it. From the specification, it appears to have been the chief purpose of the inventor to cheapen the manufacture of the package by using as little material as possible.

The Jezalik structure has a certain similarity to the wrapped box of the present application, but it falls short of the result accomplished by the latter in a number of particulars:

First, while the Jezalik package can be easily opened, the flexibility of the inner member would make it very difficult to close it satisfactorily. Instead of simply pushing the bottom member back into its sheath, as in the application, one would have to push on the article contained and, if the contents consisted of a number of small articles, such as candies, the portion projecting, if pulled out far enough, would be likely to buckle. Certainly, a box that can be closed only by pushing its contents makes a rather poor arrangement.

Second, the Jezalik structure when pulled out has nothing resembling the tray of the present application, so that it would be impossible with the former to support the contents if consisting of small articles.

Third, if the article enclosed happened to be of a rigid nature, the flexible paper would be dragged around corners which would result in wear of the inner member and possibly damage to the wrapped article if the same should be of a delicate nature. This is avoided in the present application by the stepwise movement of the relatively stiff portions of its inner member which make it possible to turn the corners of the contained article while at the same time pushing it out.

The remaining references may be briefly dealt with. Ward's structure is

simply an ordinary match box with a scored flap attached at one end, connecting the outer sleeve with the inner tray. It is not suggested that there is anything patentable about the box itself. The patent is directed to means by which a match box can be hung up on the wall without the matches falling out. To accomplish this the scored flap is attached to the tray in such manner that, when the match box is hung up, the "guide box" will be halted before it slides down all the way, off the tray. This scored flap forms no part of the tray and has no function in containing the contents. The most that Ward shows is that, if it is desired to bend a scored strip of cardboard so that it will fit into a box, the scored section must not be greater in width than the height of the box.

Rosen is a display package and has nothing in common with the present application except that it consists partly of cardboard and partly of some transparent flexible material joined in a composite blank from which the package can be constructed. Although Rosen calls his flexible material a wrapper, in fact it forms only one side of the package, being intended solely to allow the package to display its contents.

Glover discloses a box with a captive telescoping lid connected to the box by a strip of the same material from which the box is made. This strip is scored, the only requirement of the scoring being that it make the connecting piece flexible enough to fold into the box when the cover is placed upon it. Of course, the fact that cardboard can be made flexible by scoring, which is the only point at which Glover comes near the present application, hardly needs the citation of a reference.

Thus, a person skilled in the art seeking to make a better package than Jezalik would learn from these last three references that a cardboard strip can be made flexible by scoring it transversely, that folded sections of a strip of cardboard will not fit into a box unless they are no wider than the height of the box

and that a piece of cellophane can be attached to a piece of cardboard to form a composite blank. We do not believe that these teachings, when combined, would make the structure of the boxes and blanks claimed in this application and their advantages obvious to one skilled in the art.

■■■ We think that the present application is a distinct improvement of Jezalik and represents an advance in the art not obvious, having patentable novelty. The art is a crowded and comparatively simple one and in such an art great advances are not to be expected. However, patentability will not be denied to an invention which accomplishes a small but nevertheless genuine improvement, not thought of by others and not obvious. "* * * [I]t is elementary that small changes in a crowded art *may constitute invention.*" In re Baum, 123 F.2d 662, 664, 29 CCPA 719.

The box of claim 26 differs from that of claim 27 only in that it omits the two side walls of the latter. It does not appear that this omission impairs any of the advantages which the applicant's invention has over Jezalik except the ability of the tray to contain small articles. It does not, however, affect its ability to support the contents.

■■■ As to claims 22 and 24, which are directed to the blank, there is nothing new about a composite blank consisting of relatively stiff and relatively flexible material. However, the patentability of the blanks of these two claims does not depend upon any novelty in the idea of a composite blank. The claims are directed to blanks suitable for the erection of the wrapped boxes of claims 26 and 27. Since we have found that these wrapped boxes are patentable over the prior art, it follows that claims for the blanks from which they are made are allowable.

For the foregoing reasons we reverse the decision of the Board of Appeals.

Reversed.